.LAND, Justice.
 

 Relator, Clifford Landry,, was married to Isore Robin.on or about December 11, 1937. Of this marriage, one child, Laurma Grace Landry, was born in September 1938, after the separation of relator and his wife, and after her return to the home of her parents, Anthony Robin and his wife, the maternal grandfather and the maternal grandmother of the child, whose' mother died in the month of January, 1939.
 

 - The present proceeding is by writ of habeas corpus issued by relator against Anthony Robin, respondent, to obtain the custody of the child, who was of the age of six months, when the writ was issued.
 

 After having listened very attentively to the evidence in the case, the trial Judge dismissed the writ of habeas corpus. Relator has appealed.
 
 ,
 

 The reasons for dismissing the writ, as stated by the trial Judge, were that the child was only six months of age and had been cared for since its birth by the grandfather, and especially by its grandmother, and that it was to the best interest of the child to let it remain, at this time, with its grandparents.
 

 The trial Judge also declared, in his reasons for dismissing the writ, that it would be absolutely an injustice, and would be really taking a chance, to remove a child of such tender age from the custody of its grandparents, and to place it with a sister of relator and her husband, with whom relator lived, notwithstanding the fact that they might tal^e care of the child, “as they thought correct.”
 

 In his reasons for judgment, the trial Judge recognizes that, under the law of this State, the parent has a paramount right to the custody of the child, under ordinary conditions, where the child is two or three years old, or older, and stated that, after the child has grown older, the chances are that the parent would be entitled under the law to the custody of the child.
 

 In other words, the trial Judge
 
 knew
 
 that the child was being cared for properly by its grandparents, and declined, because of the tender age of the child, a mere infant six months old, to take any risk as to its welfare, by changing its custody, and placing it elsewhere, merely because the father came into court to ask for the possession of the child.
 

 It has been said that “the Judge is the Tutor of all the Tutors,” and it may be well and truly added, that “the Grandmother is the Mother of all the Mothers.”
 

 
 *893
 
 The trial Judge well knew, as this court knows, that the health, comfort, and welfare of the infant of her dead daughter were safer in the loving arms of its devoted grandmother than it could possibly be in the hands of the sister of relator, who has no children of her own, and who besides is a stranger to the child.
 

 Though a father is, as a matter of right, entitled to the tutorship and possession of his children, his right in that respect is not unquestionable or absolute.
 

 Necessarily, a reasonable latitude must be left to the trial court in determining matters affecting the welfare of children and its views upon the facts surrounding any given case are entitled to much weight.
 

 In the case of State ex rel. Peter v. Stanga et ux, 161 La. page 978, 109 So. 783; this court affirmed the district court, in the exercise of such reasonable latitude, in' the following language:
 

 “We think the exceptional features of this case remove it from the grasp of the codal articles and decisions relied upon by relator. The real issue involved, as we view if, is not so much whether the cold technical right of the father to the possession of his child should be maintained, as it is whether, from the standpoint of the welfare of the child, she should be permitted to remain in the care of her grandmother or be committed to the care of her stepmother. This issue must be resolved in favor of the grandmother. She is experienced in raising children; having had nine children of her own. She has taken the place of the child’s mother since her birth, has nursed her in sickness and cared for her in health, and is the only mother the little girl has ever known. On the other hand, while there is nothing to show the child would not be kindly treated in her father’s home, in the very nature of things she cannot receive the same care and attention there.
 

 “Relator, in the pursuit of his business affairs, is frequently absent from his family at night as well as in the day. During these absences, his wife and child are alone. The present Mrs. Peter admits she has had no experience in raising children, and, being engrossed with her household duties and the care of her own small child, no matter how well-intentioned she may be, it is manifest she is not in position to properly look after her stepdaughter. •
 

 “Every humane consideration suggests that the child should not, at this time, be separated from her devoted grandmother.”
 

 The underlying principle of the decision in the Peter’s case, cited supra, is that the cold technical right of the father to the possession of his child must yield to the welfare of the child, in a case whose exceptional features satisfy the court that the welfare of the child will be endangered.
 

 In not one of the cases cited in his brief does relator present a single decision of this court, in which an infant, only six months old, was taken from the custody of the grandmother, regardless of its welfare, and restored to the custody of the surviving father.
 

 In all of the cases cited by relator, the ages of the children, whose ■ custody was
 
 *895
 
 sought by the father, as against the right of the grandmother to such custody, are 4, 5, 5%, 6, 8, 9 and 10 years.
 

 The laws of this State relative to the care and custody of minor children have never been construed by this court as severe and inflexible laws of Draco, but, on the contrary, have been enforced, in the light of humane considerations, where the welfare of the child is clearly concerned.
 

 We agree with the trial Judge in his conclusion that the welfare of the infant in this case requires that it remain, for the present, in the care and custody of its grandparents.
 

 The judgment appealed from denies the application of relator for the custody of his minor child, and dismisses the suit and habeas corpus proceedings at plaintiff’s costs.
 

 The judgment appealed from is affirmed, at the cost of relator, with the reservation of the right of relator to visit his minor child and have her visit him at any time he so desires.
 

 HIGGINS, J., dissents.
 

 FOURNET, J., dissents and hands down reasons.
 

 PONDER, J., dissents.