DOMENGEAUX, Judge.
In this matter, which has been before us previously on a motion to dismiss the appeal, Wood v. Beard, La.App., 268 So.2d 152, we are asked to reverse a District Court judgment awarding the custody of the minor child, Abre Lee Wood, to her maternal grandparents, Mr. and Mrs. Edward S. Beard.
That judgment was the result of litigation initiated by the plaintiff mother through a writ of habeas corpus whereby she sought to regain the custody of her infant child from her own parents. The latter, defendants in rule, filed an answer and a successful reconventional demand seeking a judicial award of custody. The appellant mother urges as error the trial court’s failure to award her custody of the child and his refusal to grant her a new trial.
At the time of the birth of the child her mother, Patricia Beard Wood, plaintiff herein, was being held for extradition to California in a New York jail. Thus being unable to care for her daughter, she gave her written permission for her parents, Mr. and Mrs. Edward S. Beard, defendants herein, to remove the child from the hospital wherein she was born on August 13, 1970, to their home in Pineville, Louisiana. The understanding between plaintiff and defendants at the time was that the child, Abre, would be returned to plaintiff when she was released from jail.
Subsequently plaintiff and her husband, Lee Wood, were removed to the state of California where she entered a plea of guilty to a charge of assault and he to a charge of robbery. Plaintiff was sentenced to one year in prison and three years of probation, and her husband received a sentence of from five years to life. Plaintiff was released from prison in June of 1971 and was still on probation at the time of trial. Her husband was still in prison in California at the time of trial.
Upon her release from prison, plaintiff obtained money from her parents which she used to fly to Louisiana for the purpose of regaining custody of her child. The defendants resisted, however, and gave plaintiff the option of remaining in the Alexandria area or getting settled with a job, dwelling, etc., elsewhere before they would return the child to her. At the trial of the matter defendant, Mr. Beard, added the condition that plaintiff’s husband be released from prison, a goal which Mr. Beard was willing to assist in effectuating, and that she be reunited with him so that the child would not be raised without a father.
Plaintiff remained in Louisiana for approximately one month and then returned to California without her child. She immediately began searching for employment and approximately six weeks later she was employed by the Prisoner’s Union, a nonprofit organization in San-Francisco, apparently dedicated to aiding convicts. She also does free lance typing and between the two earns an income of approximately $400.00 per month.
Plaintiff also obtained an apartment which she shares with another woman and the latter’s three young children. Her un-contradicted testimony indicates that the dwelling is of ample size and sufficient *569 comfort to accommodate the two fatherless families, and is located in a desirable area. Plaintiff likewise testified that she has gathered furniture, clothing, etc., and is generally prepared to provide for the welfare of the child.
On the other side of the scales we have the undisputed evidence in favor of defendants. Mr. Beard testified that he and his wife have had the child since she was five weeks old and have always loved her and provided for her. He has been in his present employment for eight years and earns approximately $14,000.00 per year. The child, who is now nearly two and a half years of age, lives with him and his wife in a mobile home, and they are the only residents therein.
Mr. Beard testified further that the plaintiff had never contributed in any way to the support of the child, and had never sent her Christmas presents, birthday cards, or letters. He said that except for a telephone call in September, 1971, and possibly one previous call, he had not heard from his daughter since she left Louisiana in July, 1971. He stated that if in the future his daughter should evidence a period of stability and convince him that she is able to care for her properly, he would be willing to return the child to her.
Mr. Beard’s employer and the owner of the mobile home park wherein he resides, testified regarding the virtues of defendants and the manner in which the little girl is being raised. It was stipulated that several other witnesses, if called, would testify in a similar manner. The effect of this testimony is to show that Mr. Beard is a good, conscientious employee, tenant, and person, and that his wife shares the last two qualities. They spend a great deal of time with the child, taking her for walks, etc., and generally treat her as good parents would. The child herself is well adjusted, neat, polite, healthy, and happy. Further evidence of the child’s state of well-being is to be found in a letter from her pediatrician which was placed in evidence by stipulation of counsel.
We are of the opinion that plaintiff’s argument that the trial court erred in refusing to grant a new trial is without merit. The motion for a new trial was specifically based on LSA-C.C.P. Art. 1973 which gives the trial judge the discretion of granting a new trial if there is good ground therefor. The ground urged by plaintiff is her desire to obtain the testimony of seven character witnesses through the use of depositions upon written interrogatories. She alleged that she was not able to secure the appearances of said witnesses in court because they are all residents of the state of California and none can afford the expense of travelling to Louisiana. In support of her motion she attached the affidavits of the seven proposed witnesses, each of which attested to her good character.
We find the chronology of the foregoing to be significant. Of the seven affidavits presented with the motion for a new trial, five were dated in March, 1972, one was dated April 10, 1972, and the most recent was dated April 17, 1972. The petition for a Writ of Habeas Corpus was filed on April 6, 1972. The trial was held on April 21, 1972, and the judgment was rendered orally on May 5, 1972. The motion for a new trial was filed on May 12, 1972. Thus, five of the affidavits were completed before the filing of the petition, and all were completed no later than four days before the trial, but they were not used until seven days after an adverse judgment was rendered.
There is no reason in law why plaintiff could not have secured the depositions on written interrogatories of her witnesses prior to the trial, or requested that the matter remain open for their admission after the trial but prior to judgment. Surely, assuming that plaintiff is as well acquainted with these proposed witnesses as the affidavits would indicate, she knew ahead of time that they would not he travelling to Louisiana t04estify on her be *570 half. When all of these points are considered together they form a strong indication that plaintiff’s request for a new trial is not well founded, but rather is an ill disguised attempt to obtain a “second shot” at achieving her goal. Accordingly we cannot say that the trial judge abused his discretion in denying her motion for a new trial.
Having so decided we turn now to a determination of the crucial issue put before us by plaintiff, i. e. the question of whether the trial court erred in denying her the custody of her child.
Plaintiff has furnished us with a persuasive and well documented brief in support of her position. She argues that the natural parent of a child has the paramount right to the custody of the child and may be deprived thereof only when there are compelling reasons to do so. This is indeed the law, and such was recognized by the trial judge. It is not, however, all of the law. As we said in Webb v. Webb, La.App., 264 So.2d 925, another case in which a mother sought to regain custody of her children from their maternal grandparents :
. Although parents have a natural right to the custody of their children, nevertheless the State has an interest in children which goes beyond the parental right. In all cases involving their custody, the welfare of the children must be considered and should prevail over the mere parental right of their possession. State ex rel. Harris v. McCall, 184 La.1036, 168 So. 291; Pulling v. Theriot, 209 La. 871, 25 So.2d 620. We also bear in mind that upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and of the children, and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Fulco v. Fulco, supra. [259 La. 1122, 254 So.2d 603]
Although the Webb case involved an attempt to change a previous judicial award of custody and in the case at bar the question of custody is being presented to the courts for the first time, we think that the principles of law therein expressed are equally applicable here. The best interests and welfare of the child is our primary concern, and how these will be served is primarily a factual issue. Under these circumstances the determinations of the trial court are entitled to great weight.
We agree with the district judge in his conclusion that the plaintiff apparently has great love for her child. Love, however, is not the only factor upon which this decision must be based, and we cannot say that the other conclusion reached by our learned brother, i. e. that the immediate past, and even present, circumstances of plaintiff’s life are not conducive to the best interests of her baby, is erroneous. In so deciding we note particularly that the plaintiff is still on probation and thus her freedom is but a conditional one which could be revoked at any time necessitating further uprooting of the child. It may be that in the future the situation may change, permitting the success of a new action.
The trial judge was dealing with what is perhaps the warmest of human relations— that between mother and child. He at least had the opportunity of seeing and hearing the witnesses who testified. We have but a cold record before us upon which we are asked to overturn his conclusions and rulings. We decline to do so.
For the above and foregoing reasons the judgment of the district court is affirmed at the costs of plaintiff-appellant.
Affirmed.