DOMENGEAUX, Judge.
We are concerned herein with a devolu-tive appeal from the denial of a rule to change custody. Plaintiff and defendant were married in Natchez, Mississippi on November 25, 1960 and two children were the issue of that marriage, Carolyn Elizabeth, born August 3, 1961, and Ashley Ann, born July 22, 1962. In January, 1964 the family moved to Alexandria, Louisiana. There were matrimonial difficulties and on November 17, 1967 defendant obtained a judgment of separation from bed and board which awarded him custody of the minor child, Ashley Ann, and plaintiff custody of the minor child, Carolyn Elizabeth. On December 16, 1968 defendant obtained a judgment of final divorce which reiterated the previous judgment’s custody order. Both parents were given reasonable visitation rights but the visitation rights of plaintiff were subsequently changed on plaintiff’s motion to provide for specific periods when Ashley Ann would visit with plaintiff. Finally on June 18, 1970 plaintiff petitioned the court for custody of the child, Ashley Ann, and for child support in the sum of $100.00 per month. After trial on the rule, judgment was rendered on September 4, 1970 rejecting plaintiff’s rule and demands at her costs. Plaintiff thereupon appealed to this court.
The evidence discloses that the defendant has had custody of Ashley, now eight years of age, since the separation judgment of November 1967. At first, following the separation, both defendant and Ashley resided with his parents, but in 1969 defendant moved back into what had been the matrimonial domicile. He set aside a room therein for Ashley but allowed her to continue living with her grandparents. He explained this by saying that Ashley had grown accustomed to living with her grandparents and he did not wish to uproot her again, and further, that he must work for his living and that his job often makes it necessary for him to spend the night away from home. The majority of Ashley’s clothing, toys, and other effects are kept in the home of her grandparents and the remainder are in defendant’s residence which is located approximately one block away.
Defendant visits in his parents’ home at every opportunity, usually daily and often spends the night there. Frequently Ashley spends the weekend at her father’s home. Her father retains exclusive paternal authority over her and has, in no way, abdicated that function. He often takes his daughter and her playmates on outings such as crawfishing, picnics, etc., and has on occasion given the children instruction in science projects at her school.
The plaintiff mother has, since the divorce, been remarried. Her present hus *562 band is currently serving as an attorney in the armed forces and is stationed on an Air Force base in New York state. He stated at the trial that he was under orders to go to Vietnam, for one year, in January, 1971, and that no dependents are allowed in that country. Following his discharge from the service in September of 1973 he plans to reside in Alexandria, Louisiana but he has no knowledge of what he will do for the remainder of his time with the military. His wife expects to return to Alexandria while he is in Vietnam.
The plaintiff is a registered nurse and from all indications, an adequate mother. She cares for her daughter Caroyln in excellent fashion, affording her the love and attention that a girl of tender years requires. Since her remarriage there is no question but that she has the pecuniary means of adequately supporting both of her daughters. Neither is there any doubt of her affection for Ashley. She has at all times exercised her visitation rights with diligence and has kept in close contact with the child.
Twenty-three witnesses testified at the trial and the net effect of their testimony was summed up by the trial judge when he stated in his reasons for judgment that he had never seen a case * * * “where there was such apparent love and affection for a child and where that affection was returned so readily by the child to all people concerned.” We agree with the trial court. With the exception of some unconvincing testimony on plaintiff’s part to the effect that the child was not as well adjusted as she might be, no one had anything but favorable words for the parents, grandparents, children, and their relationships with each other. In view of the broken home situation, we are convinced that Ashley is exceptionally well adjusted. She is well cared for, greatly loved, has excellent manners, and is, in every way, a normal child. These same observations could, with equal accuracy, be made of her sister, Carolyn.
The applicable law is to be found in Decker v. Landry, 227 La. 603, 80 So.2d 91; and the multitude of cases that have followed it. Our Supreme Court there held that a parent seeking to change a prior custody award must prove * * * “that the conditions under which the children are living are detrimental to their interests and further that the applicant can and will provide a good home and better environment if given their custody.” The burden on plaintiff then, is two-fold. She must first prove that Ashley is living under conditions detrimental to her interest, and then that she can improve Ashley’s environment. As is clear from the foregoing discussion, plaintiff has failed in the first of these requirements and therefore we need not consider the second.
Plaintiff cites the cases of Acomb v. Billeiter, La.App., 175 So.2d 25; Morrow v. Morrow, La.App., 218 So.2d 393; and Nugent v. Nugent, La.App., 232 So.2d 521 in support of her contention that the custody of Ashley should be awarded to her. None of these cases is apropos. In the Acomb case the father sought custody of his children after their mother, who had been awarded their custody, had died and they were being cared for by their maternal grandmother. The court, applying the rule that a natural parent has a paramount right to the custody of his children, granted the father their custody. In the Morrow case the appellate court overturned an award of custody to the mother of the father, and granted custody to the natural mother. The father was in the armed forces at the time of trial. His father was an invalid and his mother was employed, making it necessary to leave the children in the care of her domestic help.
In the instant case the father is a natural parent, is living, and as seen above, is carrying out his paternal duties diligently, affectionately and regularly. The fact that *563 due to the necessity for working, he must entrust the care of Ashley to his parents is not, under our jurisprudence, sufficient reason to deprive him of her custody. Pellegrin v. Friedley, La.App., 237 So.2d 696; Bond v. Bond, La.App., 167 So.2d 388.
In the Nugent case the child was but seven months of age when she was forcibly taken from her mother by the father. Six weeks later the father obtained custody by a default judgment, at which time the question of custody was, of course, not litigated. One month after that the mother obtained custody by a judgment resulting from a contradictory hearing, and her daughter had been with her since that time. We affirmed the judgment granting custody to the mother. In the case at bar however, the child is eight years of age and has become accustomed to live with her father and grandparents over the past three years. As stated in Nugent, supra, “ * * * one of the important factors to be considered in determining whether a change of custody should be decreed is whether it is to the best interest of the child that it be removed from a home to which it has become accustomed and placed in another.” In this case we do not think it is.
For the above and foregoing reasons the judgment of the trial court must be and the same is hereby affirmed. Costs in both ■courts are to be borne by plaintiff-appellant.
Affirmed.